# The Chesapeake and Ohio Canal Company *vs.* John Young.

An injunction will not lie to restrain a party in possession who claims title, and who expressly denies all title on the part of the complainant, either legal or equitable.

The right of a court of equity to arrest proceedings by a perpetual injunction is one of great importance, but ought not to be employed unless the case imperatively demands it, and this is never so where the object is to restrain a mere trespass which can be compensated in damages, or where the title is not clear or is disputed.

In cases where the title is in dispute, a *temporary* injunction is sometimes granted to preserve the property until answer filed, but this is never done in this State, unless the damage complained of is intolerable and the mischief irreparable, or where the trespass goes to *the destruction* of the thing.

But even in cases of irreparable damage, the *averment* that the case is one of that character is not sufficient to justify the intervention of the court; the *facts* on which it rests must be stated, to show that the apprehension of injury is well founded.

Where the title is disputed, equity sometimes retains the bill until the title be tried at law; but this does not commit the court to the acknowledgment of an equity in the complainant, if he should fail at law to establish his title, but it may dispose of the case as justice and propriety require.

The proper course, where the legal title is doubtful, is to send the complainant to a court of law to have his title first established.

Where a party seeks to take a case out of the statute of frauds on the ground of part performance, he must establish the existence of the contract as laid in his bill, by clear and satisfactory proof, and the acts of part performance must be of the *identical* contract set up.

The fact that the complainant would be remediless if forced into a court of law, because he has not a legal title, cannot entitle him to a remedy in equity which is dependant on the possession of such title.

The act of 1824, ch. 79, sec. 19, gives to the Chesapeake and Ohio Canal Company the power to condemn lands and appropriate them for the uses of the canal, when the consent of the owners cannot be obtained.

If the owner has *agreed* to dispose of the land to the company but refuses, the company may file a bill for a specific performance, and if the existence of the agreement be proved, equity will decree a conveyance, but if the court decide there is no such agreement, then the company may proceed to condemn the land under its charter.

APPEAL from the Equity Side of Allegany county court. The bill in this case was filed by the appellant, on the

25th of August 1850, against the appellee, for an injunction to prevent the latter from occupying a certain piece or plat of land in Cumberland, at the western terminus of the canal. The location of the land in controversy and the allegations of the bill and answer, are sufficiently stated in the opinion of this court. The answer of Young, besides denying the allegations of the bill, avers that he purchased the land from the owners, and denies that a court of equity has any jurisdiction over the case.

An injunction issued as prayed, and after the coming in of the answers and motion to dissolve, testimony was taken under an order passed for that purpose, as to the title and possession of the land in controversy. The complainant proved, that on the 23d of March 1837, Moore N. Falls made a written proposition to the canal company, by which, in consideration of a certain change in the location of the dam across the Potomac, whereby his remaining lands would be rendered more valuable, he agreed to take $10 for the land needed for the construction of the canal along the Maryland shore, not exceeding one hundred and twenty feet, water surface, and for a guard-bank and tow-path; and also to take ten dollars for the land which "will, in the opinion of the engineer, be necessary to take for the works above mentioned, for one other piece of land now at my disposal known as Beatty's Purchase." The land in dispute constitutes a part of this tract called Beatty's Purchase. That the company commenced the construction of the guard-lock, guard-bank and basin ten years ago, since which time the ground in dispute has been in a greater or less extent appropriated to the company's use by filling up and levelling, though the entire filling up has never been completed; that the ground was necessary for the maintenance and repair of the canal; that land on the other side of the canal would not answer the company as well or be as convenient. That a few months before Young took possession, the engineer and one of the directors of the company were in negotiation with McKaig and Thurston, who professed to act for the owners of the

61      v.3

Beatty property, to obtain a conveyance of all the rights and privileges to which the company were entitled under the proposition of Falls; that various conversations and interviews were then had between the parties, an agreement was entered into and a draft of a deed was prepared and modified and agreed to be executed, but was never executed on account of the refusal of one of the parties, and the excavations of the basin were then stopped; that the possession of this ground was the same as the company's possession of any other part of the canal or its works, and that the lock-house was occupied by the keeper when Young took possession.

The defendant proved that the land was unenclosed and there had been no inquisition to condemn it for the use of the company; that McKaig and Thurston, in several conversations with the agents of the company, denied the company's right, under the proposition of Falls, to appropriate the land in dispute to its use; that the owners of the property had exercised acts of ownership over it for the last seven or eight years, and that the sale to Young was *bona fide* for the consideration of $1500; that he took possession under his purchase, and was in possession when the writ of injunction was served upon him. That the officers and agents of the company were frequently warned by some of the owners that they claimed the property, and that the company were doing the work at their own risk.

The court, on the 8th of October 1850, passed a decree, ordering the injunction to be retained, to afford an opportunity to the complainant to bring an action of ejectment for the purpose of trying his title to the land and premises in question, provided that the said action be brought to the next April term of Allegany county court and not after; and if not brought within the time aforesaid, the injunction to stand dissolved and the bill dismissed.  The complainant brought no such action, but after the time limited for bringing the action had elapsed appealed from the decree.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*William Price* for the appellant.

1st. It being distinctly proved that the company was in the actual possession of the piece of land in dispute when Young entered upon it, and the defendant having shown no title whatever either to the soil or the possession, is to be regarded as a *tort feasor*, and a court of equity will interfere by injunction to protect the company in its use of a great public work, it being a case in which damages would be no compensation for the interruption of the possession.    2 *Greens. Ch. Rep.*, 422, 425, 426.   3 *Do.*, 234, 244.   *Livingston vs. Van Ingen,* 9 *Johns. Rep.*, 507.   *Arthur vs. Case*, 1 *Paige*, 447.   *Mayor of Rochester vs. Curtiss*, 1 *Clarke*, 336.   2 *Story's Eq.*, 928.

2nd. The 15th section of the act of 1824, ch. 79, the charter of the canal company, reciting that it was "necessary for the making of the said canal, locks, dams, ponds, feeders *and other works*, that a provision should be made for condemning a quantity of land for the purpose," provides that "it shall and may be lawful for the said president and directors, or a majority of them, to agree with the owners of any land through which the said canal is intended to pass, for the purchase or use and occupation thereof, *and in case of disagreement*, or in case the owner thereof shall be a *feme covert*, under age, *non compos* or out of the State or county," the company shall condemn the land by the inquisition of a jury; and by the 19th section of the charter it is further provided, "that whenever it shall become necessary to subject the lands of any individual to the purposes provided for in this act, and their consent cannot be obtained, it shall and may be lawful for the company to enter upon such land and proceed to the execution of such works as may be requisite, and that the pendency of any suit in the nature of a writ of *ad quod damnum, or any other proceedings*, shall not hinder or delay the progress of the work." There was here no such *disagreement* as would authorise a condemnation of the piece of land in dispute; and if the agreement proved were not sufficient to vest in the company a title to the land, it was, at all events, sufficient to authorise them to take possession and hold it,

even against the owner, but especially against a *tort feasor*. The company had the right to go on and take possession of the property for public uses. 14 *Penn. State Rep.*, 241. The principles of that decision are applicable here, and the charter ought to be liberally construed.

3rd. The act of 1844, ch. 287, sec. 4, amongst other things, provides as follows: "Nor shall any person or persons, without the consent of the company previously obtained, build or erect on, or against the tow-path *or embankments of said canal*, or on the lands of the said Chesapeake and Ohio Canal Company, *any house, shed, building or other fixtures*," under a penalty of $20 for each offence, and the company, by its officers, agents, &c., "may remove such house, shed," &c. It is proved that the house which was in progress of erection by Young *is on the guard-bank*, and is, therefore, within the express words of this act. Independent, therefore, of all question of title or possession, the erection of this house was unlawful.

4th. Whether the canal company had acquired any right to this piece of ground by agreement with the owners or not, John Young had no title, his deed being void for champerty. 4 *Kent*, 447. But we do not insist upon this point.

5th. The action of ejectment is not applicable to such a case as this; it would nullify the charter to compel the company to bring ejectment against every person who should trespass on their property. Besides, the company may have right to land as against the owner and every one else, and yet not have such title as to maintain ejectment; see act of 1824, ch. 79, secs. 15 and 19. By these sections, all that is required is the consent of the owner that the company go into possession, and only in cases of disagreement can a condemnation be had. A mere verbal consent is sufficient, and if the owner refuses a written agreement but verbally consents, there can be no condemnation; the company must be content with the consent.

6th. Even if the decree should be affirmed, justice requires that the case should be sent back under a *procedendo*, and

this will be done. *Act of* 1832, *ch.* 302, *secs.* 5 and 6. 11 *G. & J.*, 159, 253, 342.

*John V. L. McMahon* for the appellee.

1st. The bill did not warrant the injunction. It is not in every case that you can go into a court of equity to restrain a trespass; it is only when *irremediable* damage will result, and the *facts* which constitutes this damage must be stated in the bill. 9 *G. & J.*, 473, *Amelung vs. Seekamp*. The answer denies all title, and all possession and jurisdiction of the court, and only admits notice after the taking possession by Young. The proof shows that the title was all the time in Young, and those from whom he purchased. The canal company never had adverse possession; none by enclosure; they only threw dirt out upon the land. Where a party is in possession of a part, with *title to the whole, he is in constructive possession of the whole.* 1 *Gill*, 496, 500. Adverse possession must be by actual enclosure.

The company did not fill up the land with the assent or consent of the owners, or any one else. The Falls' agreement was never carried out—there is no evidence of it, except from the allegations of the bill. The company did not undertake to make the basin under this agreement; before they began the work they were told that they had no rights under it. They did not set it up, but endeavored to make a new negotiation, which failed, and then they *abandoned* the work, and after this abandonment it was sold *bona fide* to Young, without notice.

There is no *irremediable* damage; the proof shows, that there was other land on the other side of the canal that would answer, though it would not answer as well. This is not irremediable damage.

The case was set down for *final* hearing, and the court was either to dissolve or make perpetual the injunction; the court therefore properly sent them to a court of law to try their title, and *retained* the bill to give equitable relief when this dispute should be settled. 6 *H. & J.*, 407. The court has the right

to send the party to law, and this is the usual practice in such cases, and if he does not establish his title at law, he can have no right to equitable relief. 1 *Bland,* 578, 585. 3 *Bland,* 441. 9 *How.,* 28, 29. 2 *Daniel's Ch. Pr.,* 1201, 1319. Equity has the *right to say that* the parties *shall* go to law. But having refused to go to law, the company cannot come here except upon the admission that the legal title and right of possession was in *Young.* When this is *conceded,* there is no trespass to be *redressed.* Young had the title and the right of possession.

The act of 1832, ch. 302, ought to be expunged from the statute book. But this act does not permit a party to get up a case outside of the case made by the bill, and reverse the chancellor upon such case. The chancellor can only decree upon the case made by the bill, and when he confines himself to such case, he can only be reversed or affirmed by that case. A party cannot have relief that he has not prayed for, either specially or generally. *Mitford Eq. Pl.,* 41. 6 *G. & J.,* 105. 10 *G. & J.*

If you have not the special prayer, you must show that you have a case consistent with the covenants of the bill. The equities here set up are:—1st, *expenditure of money.* But this is only where title is known to one and unknown to the other. 1 *G. & J.,* 502. 1 *Md. Rep.,* 377, *Young vs. Frost.* Here there was no mistake and no concealment of title. 2nd, they say there is an agreement which they have the right to ask to be specifically enforced. But there are not the necessary *parties* here, and an injunction could only be made perpetual after a decree for a specific execution. This would turn a bill to enjoin a trespass into a bill for a specific execution. But there is no case for a specific performance. The agreement here is the Falls' agreement, and there is no proof that the canal company complied with that agreement, so as to vest in them rights under it. The bill gives Young no notice that there was any agreement capable of enforcement; if they had, Young could have pleaded the statute of *frauds.* 3 *Paige,* 478. 1 *Md. Ch. Rep.,* 366. 1 *Gill,* 234, *Berry*

*vs. Pierson.* Where the statute is interposed, there must be part performance exclusively referable to the *agreement*, and in part execution of it. Here there is no act of part performance of Falls' agreement. It was abandoned before the work begun. There is no such thing as a license giving control over land unless expressly established. No right, title or easement can pass except by deed, and every license to go upon land not conveying an interest is revocable at any time.

2nd. As to the *disagreement:* The 19th sec. of the act of 1824, ch. 79, only provides for an entry as preparatory to a condemnation. The fifteenth section could not avail, because there was no attempt to agree with Young, the owner of the land.

But a perpetual injunction can only be granted after condemnation. An injunction cannot undo what has been done. It cannot turn Young out of possession. Even if the agreement gave title, an injunction could not put *Young* out, but here the agreement gives no title. There is no such a thing as a license to enter giving no interest, that is not revocable at pleasure, even though money has been paid for it. There are abundant authorities to sustain this, but it is not material to this case.

3rd. The act of 1844, ch. 287, did not intend to give the company any rights they had not before, but only to give a more speedy *remedy* for the preservation of the rights they already had. It does not attempt to prevent a man from building on his own land. But Young has not violated this act, he has not built on or against any embankment. But even if he has, it is no ground for *equitable* interference; equity will not interfere to prevent every illegal act. But this statute only shows that there was ample remedy at law, and makes the case so much the stronger against the company.

4th. As to champerty: This point is abandoned; but if not, a deed that is void for champerty, is void in law as well as in equity. 2 *Hill*, 526. But suppose it is void, it does not help the complainant. *Melior conditio est possidentis.*

There are but two grounds on which a deed is void for champerty:—1st, adverse possession at the time of the conveyance; 2nd, purchase pending an actual suit; neither of which was the case here.

The case ought not to be remanded; the purposes of justice do not, under the circumstances, demand it.

LE GRAND, C. J., delivered the opinion of this court.

The bill filed in this case was for an injunction. It, in substance, states, that a small piece of land running parallel with Wills creek, and lying between the inner basin and the guard-bank, which was so prepared and arranged by complainant, partly for the purpose of strengthening the guard-bank, partly for the purpose of a lock-house lot, and partly for the purpose of erecting thereon work-shops, buildings and sheds: that it is the only spot of ground the company has reserved to *itself* about Cumberland for these purposes, and that it is absolutely necessary for the proper management and working of the canal, and that it acquired the title to the land by agreement with the owners, and has been in the quiet and uninterrupted possession of the same, since about the year 1839. It then alleges that the appellee had entered upon and possessed himself of it, and commenced erecting thereon a work-shop, and declared his object to be, the establishment of a boat-yard on it. It avers, further, that the injury consequent upon the forcible ousting of the company from the land could not be compensated in damages, and that the use of the plot is absolutely necessary to the daily operations of the canal.

The answer of the appellee states that he took possession of the property, and commenced to improve it, and that whilst so engaged the injunction was served upon him. It denies that the company "has any right, title or interest in the property purchased by the appellee, by possession, improvement, or agreement with the owners thereof," and, that it is absolutely necessary for the proper management and working of the canal, and avers that there are other pieces of land along the canal which will answer for the purposes set forth in the bill, as well as the land in dispute.

There was, under an order of the court below, considerable testimony taken in regard to the alleged title of the company, and the exercise by it of dominion over the lot in question. The testimony in regard to the kind of possession of the company is conflicting, and that showing title, far from conclusive or satisfactory. The company has not, by evidence, shown that it has a title to the property. It admits in the bill, that all its title is derived from an agreement with the owners, and an uninterrupted possession since about 1839. Both of these facts are emphatically denied by the answer. And the only evidence which it has exhibited in proof of title is, a proposition of M. N. Falls to deed certain property on certain conditions, and of conversations which took place in regard to the draft of a conveyance and its execution, between Messrs. McKaig and Thurston and its agents and officers. There is no proof whatever that any of these conveyances were ever executed, and the question therefore is:—will an injunction lie to restrain a party in possession who claims title, and who expressly denies all title on the part of the complainant, either legal or equitable?

We think the authorities are clear on this subject and speak but one language. The right which a court of equity exercises to arrest proceedings by a permanent writ of injunction, is one of great importance but ought not to be employed unless the case imperatively demands it, and this is never so, when the object is to restrain a mere trespass which can be compensated for in damages, or where the title is not clear or is disputed. In the latter class of cases sometimes a *temporary* injunction will be granted to preserve the property uninjured, till an answer can be filed, 9 *How.*, 28; but this is never done in this State, unless the damage complained of is intolerable and the mischief irreparable, or, where the trespass goes to the *destruction* of the thing. *Amelung and others vs. Seekamp*, 9 *Gill & Johns.*, 468. *White vs. Flannigan*, 1 *Md. Rep.*, 525. But even in these cases of irreparable damage, the *averment* that the particular case is one of that character, is not sufficient to justify the intervention of the court; the *facts* on which it rests must be stated, to show that the apprehension of injury is

62 v.3

well founded. 9 *Gill and Johns.*, 474. Sometimes, when the title is disputed, a court of equity will retain the bill until the title be tried at law, but this does not commit it to the acknowledgment of an equity in the complainant, if he should fail at law to establish his title; it is left free to dispose of the case as justice and propriety require. 2 *Daniell's Ch. Pr.*, 1202. The proper course, where the legal title is doubtful, is to send the complainant to a court of law to have his title first established.

And where the party claims to take the case out of the statute of frauds, on the ground of part performance of the contract, he must make out, by clear and satisfactory proof the existence of the contract as laid in the bill; the act of part performance must be of the identical contract set up. It is not enough that the act is evidence of some agreement, but it must be unequivocal and satisfactory evidence of the *particular* agreement charged in the bill. *Phillips vs. Thompson*, 1 *Johns. Ch. Rep.*, 132.

But it is alleged the complainant would be remediless were it forced into a court of law, because it has not a legal title. This may be so, but the fact cannot entitle it to a remedy in equity, which is dependent on the possession of title when none such exists. By the 19th section of the act of 1824, ch. 79, it is provided, that whenever it shall become necessary to subject the lands of any individual to the purposes provided for in the act, and their consent cannot be obtained, it shall and may be lawful for the company to enter upon such land, and proceed to the execution of such works as may be requisite, and the pendency of any suit in the nature of a writ of *ad quod damnum*, or any other proceedings, shall not hinder or delay the progress of the work. Under this act it is competent for the company to condemn the land and appropriate it to the uses of the canal. But it is said, this cannot be done in this case, because the owners of the land have *agreed* to dispose of it to the company. If this be so in point of fact, then it is competent to the company to file its bill for a specific performance. The existence or non-existence of such an agreement would be a matter for the decision of the equity court. If it should decide in favor of the existence of such an agreement, a conveyance would follow by virtue of its decree,

and if its decision should be to the contrary, then, the fact of the non-existence of the agreement would be established, and the company would be authorized to proceed under the act of Assembly, to which we have adverted.

For these reasons we concur with the court below, and accordingly affirm its decree with costs.

*Decree affirmed.*