| LEVI HUGHES, ADM'R OF JOSIAH HUGHES, vs. MAY JONES, ADM'R DE BONIS NON. C. T. A. OF LESSEE *HUGHES.* | MARCH TERM, 1851. |

[EFFECT OF A JUDGMENT AT LAW—RULES OF EVIDENCE—ACTION OF DETINUE—
SUIT FOR MESNE PROFITS—JURISDICTION.]

A PARTY who relies upon a judgment, is not restricted to the record itself, but may show, by evidence *dehors,* what matters were litigated between the parties and decided by the court.

The complainant, the administrator of A., who died in 1821, recovered, in May, 1839, in an action of detinue, several negro slaves from the defendant, the administrator of B., and then filed his bill in equity for the recovery of their hires and services from the death of A. In the pleadings in the action at law, the parties do not appear in their representative characters. HELD—

That it was competent for the complainant to show, by evidence, that the title to these negroes, as derived by the parties from their respective intestates, was put in issue and decided in the case at law; and, that from the time of the institution of that action, the verdict and judgment are conclusive between them.

Yet, the effect of this recovery is not, by retro-action, to be considered as concluding the parties from all examination into the title, from the death of A., in 1821.

The action of detinue proceeds upon the ground of property in the plaintiff, *at*

*the time of action brought;* and, therefore, the recovery in that action proves no more than that, at the time of its institution, the right of property, either absolute, or special, was in the plaintiff.

The absence of the negroes sold by the sheriff from the place of sale, and other irregularities in the proceedings, though they might furnish a sufficient ground for setting aside the sale, on motion to the court, upon the return of the writs of execution, are not sufficient to induce this court, after a lapse of twenty-five years, to treat the sale as a nullity.

Examined copies of the contents of the assessors' books of the several counties may be received in evidence. It would be attended with infinite inconvenience, and would defeat one of the great purposes for which these books are made, if their contents could not be proved, except by the production of the books themselves.

The objection to the jurisdiction of this court may be taken either by way of exception, or by an amended answer.

In this case, the objection to the jurisdiction was not made until the trial on the merits. The case had been once referred to the Auditor by an order passed *with consent of parties,* under which order, accounts were stated and a large mass of evidence taken, at great expense ; and the delay had been so great, that if the complainant should now be turned round to his remedy at law, he would be defeated by the plea of limitations. It was HELD—

That in cases where the want of jurisdiction is *apparent,* the delay and the circumstances under which the objection is made, cannot be regarded ; but if there be any doubt upon the subject of jurisdiction, the court may take these circumstances into consideration and be induced by them to give less heed to the objection, than if it had been made at an earlier stage of the cause.

It was further HELD—that, in this case, the plaintiff had not that plain, adequate and complete remedy at law, which would deny him the aid of a court of equity.

THE CHANCELLOR :

This case, which has been argued by the counsel on both sides with much ability, has been very carefully considered by the court.

The material facts appear to be these : The late Josiah Hughes, upon whose estate the complainant took out letters of administration, in April, 1839, died early in the year 1821. During his life he was the owner of, and in possession of sundry negro slaves, and a small real estate, which he acquired by marriage ; the slaves absolutely, and the real estate as tenant by the courtesy. He became involved in debt, and judgments were recovered against him by certain of his creditors, and upon these judgments executions were issued, and levied upon the negroes'; and as alleged by the defendant, a sale was made of

them by the sheriff, in the year 1815, and Jesse Hughes, his uncle, became the purchaser.   Among these negroes, there were two boys, one named James and the other Isaac.

James, it is said, was sold by Jesse Hughes, the purchaser, soon after the sale to him by the sheriff, for the sum of $400, and Isaac, as contended by the defendant, was retained by Jesse Hughes as his own property, and continued in his possession until the year 1838, when he died.   The judgments against Josiah Hughes, amounted, with interest to the time of the alleged purchase by Jesse Hughes in 1815, to $680.   And the proceeds of the sale of the negro James, and the estimated value of Isaac at that time, being sufficient to reimburse Jesse, the alleged purchaser, for the money which it is said he paid the sheriff, he permitted the residue of the negroes to continue with Josiah, and set up no claim to them.   The executions were returned satisfied by the sheriff, but as there is no direct proof that Jesse paid the money, the fact that he did so is a matter of argument and inference.

It appears, also, that at a subsequent period, in the year 1817, an execution issued against Josiah Hughes, upon a judgment obtained against him by the Bank of Somerset, which was levied upon those of the slaves which it is alleged Jesse did not claim under the previous purchase, and at the sale made to satisfy this judgment, one George Jones, as stated by him in his deposition, became the purchaser, he being one of the sureties of Josiah for his debt to the bank, and that having, by a subsequent sale of part of the property, satisfied the bank, and the other creditors of Josiah Hughes, he delivered the residue of the negroes to Jesse Hughes, as he says, for the benefit of Josiah and his family.

There is much contradictory evidence in the record, with regard to the actual possession of the negro Isaac, during the life time of Josiah Hughes, but it is quite apparent, and indeed is not disputed, that the other negroes were in possession of Josiah Hughes, at the period of his death, in the year 1821.   After his death, these negroes seemed to have passed into the possession of Jesse Hughes, who also received into his family,

two of the young children of Josiah Hughes, who appears to have died in much poverty.

Things remained in this situation, until the year 1839, when Levy Hughes, the complainant, one of the sons of Josiah Hughes, having about that time attained his majority, took out letters of administration on the estate of his father, and having demanded of Marcellus Jones, who was the executor of Jesse Hughes, the delivery of all the slaves in question, including Isaac, and his demand being refused, instituted against him an action of detinue, in Somerset County Court, to February term, 1839, and at the November term following, recovered a verdict and judgment, for the said slaves, including Isaac, and the jury assessed the damages at the sum of $30. No damages were assessed by the jury for the detention of the other slaves, and no attempt appears to have been made to disturb the verdict, by any of the parties; and it appears, and is conceded, that the defendant, Marcellus Jones, complied with the judgment of the court rendered upon the verdict, by delivering to the plaintiff the slaves, and satisfying the damages and costs.

Subsequently, that is to say, on the 11th of May, 1840, the present complainant filed his bill on the equity side of Somerset County Court, from whence it has been removed to this court, claiming of Marcellus Jones, as administrator with the will annexed of Jesse Hughes, an account of the labor and services of the negroes in question, with the interest thereon, from the death of Josiah in 1821, to the death of Jesse Hughes in 1838, and for the proceeds of the sale of certain goods and chattels of the said Josiah, alleged to have been sold by the said Jesse, after the death of the former, and to pay what may be found due upon such accounting, and for further relief.

The bill contains a history of the proceedings in the action of detinue, the recovery of the verdict, and the judgment thereon, and states, that the controversy in that action, was upon the title derived, respectively, by the complainant, as administrator of Josiah Hughes, and by the defendant as the representative of Jesse Hughes. The answer of the defendant admits the recovery in the action at law, and the satisfaction of that judgment

17

by him, and sets up, by way of defence against the present demand, that he was taken by surprise at the trial, and that the estate of Jesse Hughes, is entitled to sundry discounts and deductions, for expenses incurred by him on many accounts, and especially insists, that with regard to the negro Isaac, the verdict was erroneous and would have been different, but for his inability to prove facts, which would have shown him to have been the property of Jesse Hughes.

The principal point of controversy in this case, is as to the true ownership of Isaac, and a mass of evidence has been collected, bearing upon the question. But before any remarks are made upon it, it is proper to consider the effect of the recovery at law, which, on the part of the complainant, is regarded as conclusive upon the question of title, whilst the defendant insists, it is no evidence whatever as between these parties.

Looking to the pleadings in that case, the parties do not appear in their representative characters, and the record, therefore, viewed alone, does not show that the title of Jesse and Josiah Hughes was involved. It is true, the demand made on the defendant, Jones, on the 9th of April, 1839, preliminary to the institution of the action at law, does state that the plaintiff claimed the negroes as administrator of Josiah Hughes, but it does not say, that he claimed them of the defendant Jones, in his representative character, and as the demand constitutes no part of the record, it would not be possible, unless proof, *aliunde*, may be resorted to, to show that the title of the parties to the suit, in their representative capacities, was drawn in question. My opinion is, that for the purpose of showing what was the issue in the case at law, the party relying on the judgment is not restricted to the record itself, and that he may show by evidence, *dehors*, what matters were litigated between the parties, and decided by the court. Unless this be so, there are a number of cases in which general pleading is allowed, where it would not be practicable for any of the parties to avail themselves of a former decision, because in those cases, the record does not disclose the precise questions in issue. It is, therefore, absolutely indispensable in such cases, when a matter has

been adjudicated by a court, and an attempt is made to litigate it again, that the party relying upon such adjudication, should be permitted to show, by averment and proof, that the question proposed to be tried, has been already tried and decided by a competent tribunal. In the case of *Janett* vs. *Johnson*, 11 *Gill & Johns.*, 173, the Court of Appeals say, "it appears to be a principle of law, well established, that to make a record evidence to conclude any matter, it should appear by the record, *or by other proof*, that the matter was in issue, and decided in that suit." In that case there was no question made, that the identity of the thing involved in the latter suit, might be shown by evidence out of the record, to have been involved and decided in the former suit, and the record of the first action was not regarded as a bar to the second, because the evidence in the second suit did not show that the matters involved in it, had been raised and decided in the former.

But, although I think, that it is competent to this complainant to show by evidence, that the title to these negroes, as derived by the parties from Josiah and Jesse Hughes, was put in issue, and decided in the case at law, and that from the time of the institution of that action, the verdict and judgment is conclusive between them, yet, I am not of opinion, that the effect of that recovery is by retroaction, to be considered as concluding the parties from all examination into the title, from the death of Josiah Hughes in 1821.

Certainly, so far as the negro Isaac is concerned, it cannot be denied, that there is much doubt as to who had him in possession at that time, and for some time before, and there are unquestionably strong grounds for believing that Jesse Hughes, down to the period of his death, in the year 1838, claimed and held him as his property. Now, the action of detinue proceeds on the ground of property in the plaintiff, *at the time of action brought*, and, therefore, the recovery at law in that action, proves no more than that, at the time of its institution, to wit, the 29th of April, 1839, the right of property, either absolute or special, was in the plaintiff. It certainly does not prove, that the right to the possession and enjoyment of the property was in

Josiah Hughes in 1821, eighteen years previously. I speak now of the judgment as an estoppel, against which, there can be no averment made, or proof offered. The judgment, it appears to me, cannot have a more extensive effect than a judgment in ejectment, which is only conclusive evidence, against the tenant in possession, of the plaintiff's title, from the day of the demise laid in the declaration, and, therefore, in an action for *mesne* profits, it is not necessary for the plaintiff to be prepared with proof of title, unless he seeks to recover profits, antecedent to the day of the demise, or bring his action against a prior occupier. *Wood* vs. *Grundy*, 3 *Harr. & Johns.*, 13.

It may, to be sure, be supposed that as the plaintiff is permitted to show that in the action of detinue, he recovered upon the title of Josiah Hughes, who died in 1821, it follows, of course, that the title was in him (Josiah) at that time, and that it would be impeaching the judgment to aver the contrary. But, the question here is, not whether that judgment may not be offered for any purpose, and as a circumstance to be weighed in deciding upon the title, but whether it is not *conclusive* evidence of title, in opposition to which no proof will be received. I think it is not, and that, though the defendant would not be permitted to question the title of the plaintiff, at the time of action brought, he is not precluded from controverting it at an earlier period, and this makes it necessary to express an opinion upon the evidence introduced upon this point.

This evidence I have carefully read, and considered, and upon the best reflection I can give it, and after listening attentively to the arguments of counsel, I am of opinion, that with reference to the negro slave Isaac, the proof is against the plaintiff.

In the first place, I think it is sufficiently shown, that these negroes, including Isaac, were sold by the sheriff, and purchased by Jesse Hughes, in 1815. There may have been some irregularities in the sale, from the absence of the property at the time, or from other causes. But although these irregularities, if they existed, might have furnished sufficient ground for setting aside the sale, on motion to the court, upon the return of the writs of execution, it is, I think, impossible to say now, at this

distance of time, that the sale shall be treated as a nullity, because the property was not present in view of the bidders, and the witness did not see the purchaser pay the money. That there was a sale of negro James, is unquestionable, because he was resold by the purchaser, Jesse Hughes, and the theory of the complainant's counsel is, that it was with the money received for James, and the proceeds of a slave sold by Josiah Hughes, that the judgments upon which the executions issued, were satisfied.

I think there can be no doubt upon the proof, of the fact of the sale, and I am also satisfied, that the purchase money was paid by Jesse Hughes, and that he intended to claim the negro Isaac as his property, the estimated value of Isaac at that time, and the money received for James, being about equal to the money due upon the judgments.

But it is insisted by the defendant, that though the subject matter in issue, in the action of detinue, may be the same as is involved in this case, still, as the parties are not the same, the record of the recovery in that case, cannot be used in this, for any purpose, and the case of *Fishwick* vs. *Sewell*, 4 *Har. & Johns.*, 393, is relied upon, as affording ground for the objection. In that case, in the sixth exception, the defendant, Sewell, offered evidence that Darnall, under whom it was supposed he claimed, had paid various sums of money on account of the plaintiff's intestate, Fishwick, and prayed the court to instruct the jury, that it was competent to him to recoupe, in damages, the amount of such payments made by Darnall, to the creditors of Fishwick. This the County Court refused to do, and the Court of Appeals approved of this refusal, inasmuch as the defendant claimed the property in his own right, and in opposition and disclaimer of the trust under which it was transmitted to him. But no such disclaimer is shown in this case, it being apparent from the pleadings, and evidence, in the case in this court, that the question in the County Court, in the detinue case, was upon the title of Jesse Hughes, and that Marcellus Jones, his administrator, did not set up a claim to the slaves in his own right.

17*

In addition to the evidence of a sale of these negroes, in 1815, another piece of proof is now offered, of the most pregnant character. I refer to the list marked O, returned with the last commission, and which is an examined copy from the assessor's book, in the county in which Josiah Hughes lived in the year 1817. It purports to be a list of the property of said Hughes, made for the purpose of taxation, and is proved to be signed by him. The negro Isaac is not upon it, and this is, I think, a strong circumstance to show, that he did not claim him as his property at that time. Objection is made to the admissibility of this paper, upon the ground that being only a copy it is not evidence. The objection, however, is not, in my opinion, a good one.

It would be attended with infinite inconvenience, and, indeed, would defeat one of the great purposes for which these books are made, if their contents could not be proved except by the production of the books themselves. They might be required at various and distant places at the same time, and their removal from the place where they should be kept, for public inspection, would render them almost entirely useless. I think, therefore, that an examined copy of them, may be received in evidence.

The rule upon the subject of the proof of entries in public books, not judicial, will be found in 1 *Philip's Ev.*, 339, and among those of which examined copies will be received, are the books of assessments made by the commissioners of the land tax. The rule is said to be necessary, not only for the security of the books, but for the convenience of the public.

Besides this list, signed by Josiah Hughes, it appears by a list marked Q, and proved to be signed by Jesse Hughes, that in the same year, 1817, a negro boy called Isaac, was assessed as his property.

Now, taking these two papers together, and upon a full and careful consideration of the parol evidence, I am quite convinced, that Isaac must be regarded to have belonged to Jesse Hughes, and, therefore, that there can be no recovery for his hire, or use, from a period anterior to the institution of the action

of detinue, the record of the recovery, being only conclusive from that time.

But it is said, this court has no jurisdiction to grant the relief prayed by the bill, and I am quite free to confess, that the objection presses with much force. It certainly would have been better, if the objection had been taken at an earlier stage of the cause, and before so much expense had been incurred, in collecting proof and in conducting the proceedings down to the present time. Instead of doing this, the answers take defence upon the merits, and by an order of Somerset County Court, passed at its May term, 1847, *with the consent of parties*, the case was sent to the Auditor to state such accounts, as might be directed by their solicitors, upon the proofs then in the cause, and such other proofs as might be produced before him. Under this order, thus passed by consent, accounts have been stated, and a mass of evidence taken, at great expense, and now for the first time, at the trial upon the merits, exception is taken to the jurisdiction of this court. I do not lay any stress upon the circumstance that the objection is taken by way of exception, and not by an amended answer put in *at this time*, because, in my judgment, it is as competent to the defendant to interpose the objection in one form as the other. My unwillingness to listen to the objection proceeds upon the ground, that the defendant, by waving it in his answer and absolutely consenting to an account, has caused the expenditure unnecessarily of a large sum of money, and has secured, if his objection prevails, his final success in the controversy, because now, in an action at law, the plea of limitations would be a flat bar.

The bill was filed on the 11th day of May, 1840, the answer of the defendant on the 18th of May, 1841, nearly ten years ago, and now after the parties have gone on preparing their case for trial, on its merits, and after they had consented to go before the Auditor for an account, and when, if the complainant is turned round to pursue his remedy at law, he must be defeated by the plea of limitations, the court is asked to say it has no jurisdiction to try the cause and grant the relief prayed. If, to be sure, the want of jurisdiction is apparent, the delay and

the circumstances under which the objection is made must be disregarded, however severely it may operate; but if there be any doubt upon the subject, the court may surely take these circumstances into consideration, and be induced by them, to give unwilling heed to the objection.

The question then in this case, is, whether the plaintiff has that plain, adequate, and complete remedy at law, which shall deny him the aid of chancery, under the circumstances of this case. That he could not have recovered for the hire and services of the slaves sought to be recovered by this bill, in the *action of detinue*, is evident from the nature of the action. His right to recover these, originated with the grant of letters to him on the 9th of April, 1839, and as he had no title to the negroes prior to that time, he could not have recovered damages for their detention by the defendant, antecedently thereto. Neither could the plaintiff have recovered damages for the detention of the slaves prior to the 9th of April, 1839, in an action of trover, because in such action the right so to recover, would not go back further than the demand and refusal, and the plaintiff had no authority to make a demand until he took out letters of administration. *Fishwick* vs. *Sewell*, 4 *Har. & Johns.*, 394.

The action of replevin he could not have brought without giving bond with sureties, and assuming thus a personal responsibility which, perhaps, an administrator should not, under all circumstances, be required to do.

This case is marked by some peculiar circumstances. It is not like the case *Adair* vs. *Winchester*, 7 *Gill & Johns.*, 14, nor that of *Oliver* vs. *Palmer and Hamilton*, 11 *Gill & Johns.*, 426. In each of these cases, the remedy at law, was clear and ample, and in the latter, the court say, "that as Oliver had accepted the order, the remedy at law in an action for money had and received, was appropriate, easy and complete." In this case, there can be no doubt that with reference to all these slaves, except Isaac, there was a sort of *quasi* trust, and the observations of the Court of Appeals in the case referred to at pages 443 and 444, certainly give countenance to the idea that under such circumstances, chancery may be resorted to. With

regard to this property, other than Isaac, Jesse Hughes may, I think, be considered as trustee, *de son tort*, and for the use of it, liable to account in equity. *Hill on Trustees*, 173.

Upon the whole, then, I am not disposed now, at this stage of the cause, to turn the plaintiff round to sue at law, when it is most apparent it would be equivalent to an absolute and final decision against him. The case must, therefore, go to the Auditor for the purpose of taking an account of the value of the hires and the services of the slaves, (other than Isaac,) from the period of the death of Josiah Hughes to the date of the demand preparatory to the institution of the action of detinue. And in taking the account, the Auditor will be governed by the usage of the court in reference to averaging the testimony. The Auditor will also charge the defendant with the amount of sales of the personal effects of the deceased Josiah Hughes, as proved by John Daugherty, or otherwise, and credit him with any sums of money Jesse Hughes may have paid for or on account of Josiah, and also with any sums of money which may be shown to be due him from said Josiah, and also for taxes paid by him, or which he may show, he, the said Jesse Hughes, has paid on the estate of the said Josiah.

But, in the account so to be taken, the defendant is not entitled to be credited with moneys which the said Jesse may have paid or advanced for the children of said Josiah since his death, such sums, so paid, not being legal offsets to the claim of the complainant, as administrator of Josiah Hughes, against him, as administrator of Jesse Hughes.

Interest must be allowed the complainant, upon the hire or value of the slaves from the end of each year, but no rests, or compounding of interest will be allowed.