JOSEPH E. PUNTE *v.* EMMA V. TAYLOR

[No. 165, October Term, 1946.]

*Decided July 8, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*A. David Gomborov,* with whom were *H. Lee Brill* and *A. Jerome Diener* on the brief, for the appellant.

*John E. Raine, Jr.,* with whom was *James L. Anderson* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

Emma V. Taylor (appellee) filed a bill in the Circuit Court for Baltimore County, in Equity, against Joseph E. Punte (appellant), in which it is alleged: (1) That she owns a tract of about six and one-half acres of land located on the west side of Middle River, in Baltimore County, which she acquired from Robert H. Taylor by deed dated April 4, 1936. (2) That the defendant owns a tract of land adjoining on the west the land of the plaintiff, which he acquired from Henry P. Pilert by deed dated June 8, 1909. (3) That a road, owned in fee simple by plaintiff, is the only means of ingress and egress to her property; that this road runs, for a considerable distance, along the property of defendant, and has been used for a great number of years by the plaintiff and previous owners, and by the public in general as a means of ingress and egress to her property, and that its location has been established and used for more than 20 years; that the same has been improved from time to time in its present location by the Highways Department of Baltimore County, and that no question of the right of the complainant's use of the road as so located has ever been raised. (4) That defendant caused to be placed and erected a number of posts within the road as actually used; that these posts make it impossible to use the right of way and make the property of the plaintiff inaccessible to Back River Neck Road (or Eastern Avenue). That defendant has erected a sign in the roadbed, that the road is closed. (5) That the plaintiff conducts upon her property a restaurant, tavern, and shore resort, and the action of the defendant in blocking the road causes her irreparable damage and loss, by rendering her property inaccessible to the highways in the vicinity, and that she has no adequate remedy at law.

The bill prays: (1) That defendant show cause why the posts which he has erected and placed in said highway should not be removed. (2) That the court may pass such final order to restrain the defendant from preventing or in any manner interfering with the complainant's use of the road herein referred to. And (3) for general relief. The bill is sworn to.

The defendant, in his answer: (1) Denies that the road as being used has been used as such for more than 20 years, and avers that the said road had just been recently used by the complainant. (2) He admits the erection of the posts but avers that they are all on his property, and that the complainant has an adequate road, to wit, "the original road as laid out to make their property accessible." (3) That complainant has adequate means of conducting her business by using the original road as laid out.

The case was tried by the chancellor in open court. He decreed that the defendant remove the posts within 30 days from the date of the decree, and further ordered that "the defendant be restrained and permanently enjoined from preventing or in any manner interfering with the complainant's use of the roadway referred to in the bill of complaint," and that the defendant pay the costs of the proceedings. From this decree the defendant appeals.

Two questions are raised by the appellant: (1) That appellee was not entitled to any relief in equity as she had an adequate and complete remedy at law. And (2) that, assuming that equity has jurisdiction, the evidence did not warrant the relief granted.

The evidence shows that there is a road which runs easterly from the Back River Neck Road (now called Eastern Avenue) for a distance of about 790½ feet. The defendant's property lies south of this road. Immediately adjacent to the defendant's property, and binding on its easterly line, is the property of the plaintiff. At the western line of the plaintiff's property, and contiguous to the eastern line of defendant's property, there

is a road which runs southerly along the eastern side of the defendant's property, on plaintiff's land, to the premises of the plaintiff. In order to get into her road one would have to make a right angle turn from the road running from Eastern Avenue. The plaintiff, her tenants, and patrons, instead of making this right angle turn into the plaintiff's road have, for some distance west of her entrance, curved around over the property of the defendant, making an arc from the former road ending some feet south of the plaintiff's entrance. It was along the former road, near the corner, and along the eastern side of the defendant's land along which the entrance to the plaintiff's premises ran, that these posts were placed. They thus served the purpose of stopping the use of this arc over the defendant's land as a convenient way of getting to or out of the plaintiff's premises.

While title to the road leading to Eastern Avenue was alleged to be in the plaintiff, the proof fails to establish this. In fact, the case was tried solely on the ground that the plaintiff had a right by prescription to use this arc over the defendant's land. The testimony seems to show that before Bob Taylor (the plaintiff's grantor) built the house now owned and occupied by her, the private road leading into the plaintiff's premises did not exist. At that time, and no doubt for some time prior thereto, the road from Eastern Avenue, where it is now intersected by the plaintiff's private entrance, seems to have ended at that point and from there the country was wooded and the land dropped from that point, down grade to Middle River. There were shore houses erected almost at the end of this road. The pictures in the case show this to be so, one being taken of the scene, at the entrance looking east, and the other being taken looking north as you enter the road leading to Eastern Avenue. Mr. Punte's home is just off the road leading from Eastern Avenue, and near the present entrance to Mrs. Taylor's property.

Charles A. Lawrence was superintendent of the Highways Department in the Fifteenth District. He visited

this location and seems to have made some repairs to this road from 1918 to 1930. He could not say that the road was in the same location in 1930 as it was in 1927, and that there were no posts there. Appellant complained to his men, in 1944, that they were working and putting material on his road.

The appellee testified that she visited the property she now owns around 1924 or 1925, and occasionally thereafter she would stop in there, until she went there to live in 1932. That she has never noticed any change in the location or direciton of the roadway into the property, where she has lived ever since; that "the public, everybody that came in there, the bread man, the milkman, the groceryman, the customers" used the road. That when her patrons tooks their boats out they had a little bit of trouble getting them out the road, since it has been staked off. Her property adjoins Middle River. On her place is the big house where she conducts the restaurant, and five cottages. Some of these tenants walk, some come in cars; that some people have not been coming because they could not make the turn. She says quite a few of the stakes have been removed, and that has helped somewhat, but has not eliminated the trouble. What she means by stakes is not shown. It is evident she was not referring to the posts which the defendant planted, which are the subject of her complaint. Since 1932 she has used the road every day, and "people would come in, customers, and the family, the tradesmen." She stated: "Since we have moved the stakes and some trees, and they took down quite a few of those big trees, they can just about make it (the turn), but they still scrape Mr. Punte's one post there and sometimes you can't help from knocking it over a little." She said: "The beer man, they could not bring their big trucks in and the soft drink man, and they told me they would either have to deliver, or if I want the stuff delivered myself or make other arrangements." She thinks the posts were put up by the appellant in 1944, about two years before the case was tried. She was asked, on cross ex-

amination: "Q. Now, tell what delivery man does not come in there? A. Well, they all come in but they still have trouble, I think Mr. Punte still has trouble with one of the two drivers because there was such a big truck he can't make a turn, he strikes the posts, and he can't help it."

John Earl testified that he had been going down to Bob Taylor's for the last 24 or 25 years, regularly. He said there was no change in the road until Punte put in the posts and that he had driven the road and had been down to Taylor's when there were as high as 200 people down there. He said the road originally was nothing but dirt, but since it has been rolled, "it is slag surface there," and that he has been going to Bob Taylor's place regularly for more than 25 years.

Mr. William Whitney, a former County Surveyor, has known this location for years. He surveyed it in 1923. At that time there was a road 16 feet wide from Eastern Avenue along the northernmost line of the Punte tract to the property formerly owned by Bob Taylor. There was a road that continued on from the driveway. At that time there was no road on the westernmost line of the Taylor property. "There was no road down along that line." That the 16 foot road was the outlet from Bob Taylor's place, and ended at Taylor's westernmost line. "There was no road from the end, no sixteen foot road running north and south along this line (indicating) at that time in 1923. The toilet here was the end of the grass road, and there was no road there on that side and no visible ingress or anything running south." He stated that he made a survey of the property on November 14, 1945. "I found there had been a bend in the road. The road had a cut in it, the southernmost line of the right of way had gotten out of the right of way and encroached upon Punte, the encroachment started, according to my notes, at thirty-four feet from the pipe I put in and along the southernmost line of this property, along the easternmost line the encroachment was fifty feet where they had encroached upon his property by a

road curving to the south." He stated the encroachment on Punte's property ran for a distance of 191.4 feet, and that it varies from 2 feet to as much as 10 feet. He was shown a plat that he made of this property in 1923, and it shows no road bounding on the westernmost outline of the Taylor property, and stated that if there had been such a road he would have shown it on the plat.

The appellant stated he purchased his property in 1901, and that there was a road that bounded the northernmost part of his land from Eastern Avenue to Taylor's property. He said that at the end of his land there was no turn in the road and that "the people * * * had to make some kind of a turn to come to that first house and so they turned to the left and went on back." He stated that the people came "in at Eastern Avenue and went right straight down to the first shore house, the second shore house they cut across in front of it and the same way they went to the third shore house." There was a toilet on the Taylor property, which was replaced by the Government at a location about 25 feet from the old toilet, right at the side of the road at the intersection of the Taylor lane with the road leading to Eastern Avenue, and there is evidence that the placement of this toilet caused people traveling in automobiles, going to and from the Taylor property, to encroach on the Punte property. Appellant further testified that the encroachment upon his land began "in 1940 when Mrs. Taylor started to get boarders and she had sixteen or eighteen down there and every one owned a car, and, naturally, they would be passing one another on the road and they would move from one side to another on account of the road and my field was the widest and they cut over in that." But, "they had not cut in there at that time."

Joseph H. Punte, a son of the appellant, said that the condition of the curve leading into the Taylor property was, in 1945, about like it is shown on the plat offered in evidence. He had lived on the property all his life. He stated that the Taylor entrance did not exist in 1930. His testimony is that in order to get down to Taylor's

place you would have to drive around sort of through the woods, back of a building, and circle around again to the road leading to Eastern Avenue. He said that a niece of Robert Taylor got stuck down there in a Ford car along about 1929. He stated that before the toilet was built, about three years ago, no automobiles encroached on his father's property.

George Pyle testified he lived on the Punte property from 1926 until July, 1933, and that at that time he was hauling ice—in the hauling business. He delivered ice to Bob Taylor from 1930 or 1931, until he moved from the property in 1933. He used the road running back from Eastern Avenue every day in the summer months and in the winter once or twice a week. He stated that the trees on the road from Eastern Avenue to Taylor's property were almost impassable. "I had a truck and I turned just where the Taylors turned and I used to go in there with anywhere from a half to three-quarters of a ton of ice on, and you could only go down as far as the corner to be safe, to deliver any ice. Many a time I carried it, * * * from the corner of the road which is now in question, and many a time I carried the ice from that turn to Mr. Taylor's place. There was a sharp corner of woods there, there was no curve like that (indicating). The road has been straightened out, when I say road, I would not call it a road, I guess it was a portion of the field when I was down there. There was some sections there if you attempted to go through you would not get through on account of the mud, then there would be a little grass growing inside of it. It looked like people would try to use the road and they would get out of the road here and would get over in the field." He testified that Bob Taylor bought this property in 1929 and he did a lot of digging down there before he started to build a new house, and after he got his new home built "it was when I started to serve him with ice down there, I used to pull down there, right in back there, of that house, with my truck."

Exhibited in the case is a deed for the Taylor property, dated the 24th day of October, 1929, by Sarah J. Young to Robert H. Taylor and Mary E. Taylor, his wife. The witness was asked the question: "When did you notice a road down along this shaded portion (indicating)? A. As I told you, I went down there in 1928, if my memory serves me right and at that time somebody had driven across the field." He said: "It was like a crooked path through the field, it could not be called a road, it looked like somebody wanted to make a short cut and cut across the field." He denied the statement of Earl that the big house on the Taylor place was built in 1923, and stated his "father helped Mr. Taylor to build the house" and that at that time his father lived with him in a house on the Punte property.

It is clear from the evidence in this case that the land forming the arc, which connects the road on Taylor's property with the road leading to Eastern Avenue, is the property of Punte. The appellee made no attempt to show that the paper title to that land was vested in her. She relies solely on such usage as will constitute a prescriptive right to an easement over the land. Such usage must be open, notorious, continuous, and under a claim of right for 20 years, and she carried the burden of proof to establish such usage. *Oliver v. Hook,* 47 Md. 301, at page 311; *Hansel v. Collins,* 180 Md. 209, at page 216, 23 A. 2d 686; *Smith v. Shiebeck,* 180 Md. 412, at page 419, 24 A. 2d 795.

The pleadings in this case show that a question of title to land is directly involved. The appellee, in her bill of complaint, avers she owns the land involved. The appellant denies this in his answer, and asserts he owns the *locus in quo.* Though he thus raises a question which, in the absence of special circumstances, ordinarily may be tried at law and therefore is not within the jurisdiction of a court of equity, nevertheless, in his answer, and apparently at the trial, he did not raise the question of jurisdiction of a court of equity to decide the question of title. He did not traverse appellee's allegation that she

had no adequate remedy at law, but did traverse her allegation of title; *i. e.*, her right to any remedy at all. In the circumstances, when the question of equity jurisdiction is not raised below, it is waived and cannot be raised on appeal. Code 1939, art. 5, sec. 41; *Wicks v. Westcott*, 59 Md. 270; *Miller, Equity Proc.*, sec. 340.

From what we have said, we are of opinion that the appellee failed to show by the evidence a prescriptive right to use the way in question. The decree, therefore, will be reversed.

*Decree reversed, bill of complaint dismissed, with costs to appellant.*