MOORE ET UX. v. McALLISTER

[No. 178, September Term, 1957.]

498

500

*Decided April 30, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT and HORNEY, JJ., and CARTER, J., Chief Judge of the Second Judicial Circuit, specially assigned.

*Franklin Somes Tyng* for the appellants.

*William D. Gould* for the appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal presents a technical question of jurisdiction.

Stillson A. Moore and his wife, Grace L., (the Moores), filed a bill in the Circuit Court for Dorchester County complaining that John J. McAllister (McAllister) was encroaching upon, and interfering with the lawful use of, a 50 foot strip of land situated between the respective tracts of the opposing parties, and extending from the Sharptown-Eldorado state highway approximately 3000 feet to the northwest fork of the Nanticoke River. The Moores contend (i) that they own the strip of land, (ii) that for more than twenty years they have used a single track roadway which has always existed within the limits of the strip, and (iii) that McAllister has plowed, planted, and tilled crops on the strip as if it were his own. In addition to alleging irreparable damage, the Moores further claim that the roadway is the only access to their tract, and that the destruction thereof had caused them great distress and hardship. The bill sought a permanent injunction and further relief. McAllister, by his answer, admits that his property is bounded by a 50 foot strip of land, but denies that the roadway described in the bill lies within the strip referred to in the deeds. He contends that the roadway which he has plowed, and otherwise tilled, lies either wholly or partly within the lines of his own property. No question as to jurisdiction was raised by the pleadings. Other than the bill and answer, the only other proceedings filed consisted of interrogatories and a "request for admission" filed by the plaintiffs, and the "answers" to both filed by the defendant. The chancellor passed an order for a hearing, but before the hearing was commenced, he dismissed the bill by a final decree for the reason that he was satisfied that the court was without jurisdiction to determine the issues raised by the pleadings. From the decree of dismissal, the Moores appealed.

Although the appeal presents other minor points or questions of law, the only *real* question for us to decide is whether the chancellor under the circumstances in this case could

raise, on his own motion, the lack of jurisdiction to hear and determine a title dispute on the theory that there was an adequate remedy at law.

There is no doubt that in the early decisions, an injunction would not be granted to restrain a trespass where title was in dispute between the parties until the question of title had been settled by an action at law. It was axiomatic that equity would not determine a controversy involving the *legal* title to land. There is, however, no clear exposition in the decisions of the reason for the rule.[1] The cases simply state the rule without explaining its origin. It certainly could not rest upon the question-begging maxim that "equity will not determine *legal* rights," for quite often equity would determine controversies involving the construction of purely legal rights and questions of fact. In specific performance cases, for example, equity did not hesitate to construe the law and determine the facts as to whether a valid legal contract existed or not.

Great respect for the rule was engendered in 1801 when Lord Eldon in *Pillsworth v. Hopton,* 6 Ves. 51, refused an injunction against a defendant in possession, it appearing that the plaintiff had failed in an action of ejectment. He said:

> "I remember perfectly being told from the bench very early in my life, that if the plaintiff filed a bill for an account, and an injunction to restrain waste, stating, that the defendant claimed by a title adverse to his, he stated himself out of the Court as to the injunction."

Gradually, however, the judiciary in both England and the United States began to realize that there was no longer any

---

1. Legal historians suggest that the reasons for the rule were: (i) the practical difficulty of settling questions of title before the Chancellor, sitting only at Westminster, by requiring litigants to appear there from all parts of England, while from the beginning, through judges of assize and their successors, questions of title were tried locally at common law; and (ii) the method of trial by deposition in equity was not as satisfactory as trial by oral testimony in open court at law.

good reason for the rule. Exception after exception have whittled away the rule from time to time to such an extent that by 1952 Judge Markell in *Lichtenberg v. Sachs,* 200 Md. 145, 88 A. 2d 450 (1952), was able to say:

> "Whether or not in the course of a century the rule that equity ordinarily has not jurisdiction to enjoin trespasses or interference with easements until after title has been established at law has become an exception and the exceptions to the rule have become the rule is a speculation we need not pursue." [2]

The most important exception to the rule is that a temporary injunction will be granted against *irreparable damage* pending an action in a court of law in ejectment or trespass to determine a dispute as to title. This exception has repeatedly been stated and applied in Maryland. *Clayton v. Shoemaker,* 67 Md. 216, 9 A. 635 (1887). See also *Herr v. Bierbower,* 3 Md. Ch. 456 (1851); *White v. Flannigain,* 1 Md. 525 (1852); *Chesapeake & Ohio Canal Co. v. Young,* 3 Md. 480 (1853); *Long v. Ragan,* 94 Md. 462, 51 A. 181 (1902); *Oberheim v. Reeside,* 116 Md. 265, 81 A. 590 (1911); *Mullikin v. Hughlett,* 142 Md. 539, 121 A. 244 (1923); *Metaxas v. Easton Publishing Co.,* 154 Md. 393, 140 A. 603 (1928); *Haldas v. Commissioners of Charlestown,* 207 Md. 255, 113 A. 2d 886 (1955). The case of *Diener v. Wheatley,* 191 Md. 690, 62 A. 2d 783 (1948), is not in point, but therein the Court implied that equity proceedings may be stayed under proper circumstances. Also see *Davis v. Reed,* 14 Md. 152 (1859), which did not involve a disputed title, but is relevant on the issue of irreparable injury.

Many of the early cases, as well as some of the later ones, denied a temporary injunction solely because the alleged damages were not irreparable. Thus, when a right of way

---

2. For a statement to the effect that the rule is dying though it is not yet a corpse, see the article by William Draper Lewis, *"Injunctions against Nuisances and the Rule Requiring the Plaintiff to Establish His Right at Law,"* 56 U. of Pa. L. Rev. 289 (1908).

was obstructed but plaintiff had another reasonably convenient outlet, his damage was not irreparable and he could not obtain a temporary injunction. This strict rule was adopted in *Amelung v. Seekamp,* 9 Gill & J. 468 (1838), and has been cited in many subsequent cases. See also *Gulick v. Fisher,* 92 Md. 353, 48 A. 375 (1901); *Finglass v. Franke Sons Co.,* 172 Md. 135, 190 A. 752 (1937). The cases of *Stewart v. Chew,* 3 Bland 440 (1831), (cutting timber), *Lanahan v. Gahan,* 37 Md. 105 (1872), (using wall of another building for support), and *Whalen v. Dalashmutt,* 59 Md. 250 (1883), (erecting awning post in pavement of adjoining property owner), did not concern rights of way, nevertheless the same rule of law as to the absence of irreparable damage was applied.

But where the plaintiff had no other reasonably convenient outlet, his damage was irreparable and he was entitled to a temporary injunction. *Shipley v. Caples,* 17 Md. 179 (1861); *Smith v. Shiebeck,* 180 Md. 412, 24 A. 2d 795 (1942); *Campbell v. Bishields,* 197 Md. 572, 80 A. 2d 262 (1951); *Lichtenberg v. Sachs, supra* (1952).

The trend away from the stricter rule in cases seeking an injunction to restrain a trespass where the title was in dispute began with *White v. Flannigain, supra,* decided in 1852, when this Court declared that "a court of equity will not, as a general rule, interfere by injunction, to restrain a mere trespass, * * * to land; but that it *will* so interfere under certain circumstances, * * * [to] prevent irreparable mischief or ruin."

When there is a *real* dispute as to the legal title to land—sufficient to constitute substantial doubt as to who is the owner thereof—and a question of the jurisdiction of equity to try the issue has been properly and seasonably raised, then the question of ownership must be determined in a court of law. The proper procedure in such an event was laid down in 1887 by this Court in *Clayton v. Shoemaker, supra,* at p. 221:

> "There should be a temporary injunction prohibiting the * * * [defendant] from proceeding with the erection of his building until the title has

been decided in a Court of law * * *. The plaintiffs below should be required to institute immediately an action at law with a view to have their title determined, and if they fail to do so, or having done so, are unsuccessful in maintaining their title, the injunction should be dissolved. But if the decision of a Court of law is adverse to the claim of title set up by the defendant below, the injunction should be made perpetual." [3]

See also *Miller, Equity Procedure* (1897), Sec. 258, in which the practice "to retain the bill for a time in order to give the parties an opportunity to have the legal question decided at law," is discussed in general terms. A footnote to the section cites many cases, including the *Clayton* case.

But when there is no *real* dispute over the title, or when there has been a waiver of jurisdiction, a court of equity has full and complete jurisdiction to try and determine the question of title.

When there is no real dispute over the legal title sought to be protected, or when such title is not in doubt, there is no reason to require the parties to resort to a court of law to determine the title issue. *Oberheim v. Reeside, supra; Greenbaum v. Harrison,* 132 Md. 34, 103 A. 84 (1918); *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 65 A. 2d 580 (1949). See also *White v. Flannigain, supra.*

Likewise, when a defendant to a bill in equity files an answer, and does not think it proper or omits to make objection by the pleadings to the jurisdiction of equity to try and determine the question of title, he is deemed to have waived jurisdiction, and the equity court should proceed to try the issue. *Shryock v. Morris,* 75 Md. 72, 23 A. 68 (1891);

---

3. The Supreme Court has also approved the use of temporary injunctions in cases of alleged trespass. In *Erhardt v. Boaro,* 113 U. S. 537 (1885), Mr. Justice Field stated: "This [strict] doctrine has been greatly modified in modern times, and it is now a common practice in cases where irremediable mischief is being done or threatened, going to the destruction of the substance of the estate * * * to issue an injunction, though the title to the premises be in litigation."

*Punte v. Taylor,* 189 Md. 102, 53 A. 2d 773 (1947); *Haldas v. Commissioners of Charlestown, supra.* See also *Wissler v. Elkins,* 149 Md. 318, 131 A. 444 (1925), (boundary line dispute); *Weeks v. Lewis,* 189 Md. 424, 56 A. 2d 46 (1947), (relocation of right of way); *Feldstein v. Segall,* 198 Md. 285, 81 A. 2d 610 (1951), (widening of right of way).

In *Shryock v. Morris, supra,* this Court said, at p. 77:

> "[I]f the objection to the want of jurisdiction be not taken at the proper time, and in the proper manner, the Court will entertain the suit, although the defendant may object at the hearing, unless it be in cases in which no circumstances whatever could give the Court jurisdiction. * * * This principle has been, by statute, incorporated into our chancery practice, in respect to appeals, * * *."

The case of *Punte v. Taylor, supra,* is also in point. At p. 111, we said:

> "The pleadings in this case show that a question of title to land is directly involved. The appellee, in her bill of complaint, avers she owns the land involved. The appellant denies this in his answer, and asserts he owns the *locus in quo.* Though he thus raises a question which, in the absence of special circumstances, ordinarily may be tried at law and therefore is not within the jurisdiction of a court of equity, nevertheless, in his answer, and apparently at the trial, he did not raise the question of jurisdiction of a court of equity to decide the question of title. He did not traverse appellee's allegation that she had no adequate remedy at law, but did traverse her allegation of title; *i. e.,* her right to any remedy at all. In the circumstances, when the question of equity jurisdiction is not raised below, it is waived and cannot be raised on appeal."

And in the *Haldas* case, *supra,* in which the defendant had failed to raise any question of jurisdiction in the circuit court, we stated, at p. 263: "By acquiescing in complainant's

choice of the court of equity as the forum for the case, defendant waived the question of jurisdiction."

The statute referred to in the *Shryock, Punte* and *Haldas* cases, all *supra,*—cited in many cases during the period of more than a century between 1841 and 1957—is Chapter 163 of the Acts of 1841, which provides: "No defendant to a suit in equity in which an appeal may be taken shall make any objections to the jurisdiction of the court below, unless it shall appear by the record that such objection was made in said court." This statute, which was last codified as Code (1951) and (1956 Cum. Supp.), Art. 5, sec. 41, was repealed by Chapter 399 of the Acts of 1957. Parallel Table Two appended to the Maryland Rules as Appendix C (in Volume 9, p. 491, of the 1957 Code) shows that Art. 5, sec. 41, *supra,* was "repealed, superseded, modified by or incorporated, in full or in part," in Maryland Rule 885.

The bill for injunction in this case was filed after the repeal of Art. 5, sec. 41, *supra,* but it would have had no application to the question which confronts us. The jurisdictional question was not raised for the first time in this Court, but was raised in the lower court by the chancellor himself when he dismissed the bill on his own motion after the defendant had waived the question of jurisdiction.

Whether the chancellor had a right to raise the lack of jurisdiction requires a limited inquiry into the meaning of that equivocal word "jurisdiction". Juridically, jurisdiction refers to two quite distinct concepts: (i) the *power* of a court to render a valid decree, and (ii) the *propriety* of granting the relief sought. 1 *Pomeroy, Equity Jurisprudence* (5th ed. 1941), Secs. 129-31. To ascertain whether a court has power, it is necessary to consult the Constitution of the State and the applicable statutes. These usually concern two aspects: (a) jurisdiction over the person—obtained by proper service of process—and (b) jurisdiction over the subject matter—the cause of action and the relief sought. As was said in the *Shryock* case, *supra,* at p. 76, "it is a settled rule, that, the Court of chancery being a Superior Court of general jurisdiction, nothing shall be intended to be out of its jurisdiction which is not shown to be so." However, jurisdiction over

the person and the subject matter goes to the very basic *power* of the equity court. If jurisdiction is lacking in this sense, a decree rendered by the court would be void. This is so because in such cases there are no circumstances whatever which could give the court jurisdiction. *Shryock v. Morris, supra,* at p. 77. Stated otherwise, there is a fundamental lack of jurisdiction over the parties or the subject matter, or both. *Bogley v. Barber,* 194 Md. 632, 641, 72 A. 2d 17 (1950). Under such circumstances, before a decree is even rendered, there is no doubt that the court may—indeed it should—dismiss the action on its own motion. Furthermore, where the court lacks power to decide a case, such fundamental jurisdiction cannot be conferred by waiver or consent of the parties. See Rule 885, *supra.* For instance, the parties to an automobile accident could not confer jurisdiction by consent on a court of equity.

Originally the term "equity jurisdiction" referred to the category of controversies that a court of equity was authorized to decide. So long as the principles of equity were administered by separate courts, questions of equity jurisdiction were often considered to be jurisdictional in the strict sense, *i. e.,* if the cause of action was not of a kind that fell within the province of the chancellor, a court of equity had no power to decide the case. However, in those states where law and equity have been merged, equity jurisdiction is something entirely different from jurisdiction over the subject matter. See *Chafee, Some Problems of Equity* (1950), 305-6. Thus, in those states which have a single system of courts administering principles of both law and equity, the lack of equity jurisdiction does not necessarily mean that the court lacks *power* to adjudicate the controversy, but only means that under the historic principles of equity the party seeking relief is not entitled to it. There the concept of equity jurisdiction is one that relates to the question of the merits of a controversy rather than to the basic power of the court to decide the case. As Mr. Justice Holmes stated in *Massachusetts State Grange v. Benton,* 272 U. S. 525 (1926):

"Courts sometimes say that there is no jurisdiction

in equity when they mean only that equity ought not to give the relief asked. In a strict sense the Court in this case had jurisdiction. It had power to grant an injunction, and if it had granted one its decree, although wrong, would not have been void." [4]

Some law writers think that in states where there are still separate equity courts, equity jurisdiction is a fundamental question of power.[5] However, the late Professor Chafee of Harvard pointed out the fallacy of this point of view. It is unsound, he said, to suppose that a chancellor has no *power* to deal with a suit for equitable relief if he was wrong in deciding that the remedy at law was inadequate without having evidence to support such conclusion. *Chafee, op. cit., supra, 327-32.* As Lord Sumner said in the Privy Council in *Rex v. Nat Bell Liquors, Ltd., 2 L. R. [1922] A. C. 128:*

"How a magistrate, who has acted within his jurisdiction up to the point at which the missing evidence should have been, but was not, given, can, thereafter, be said, by a kind of relation back, to have had no jurisdiction over the charge at all, it is hard to see." [6]

Maryland has adopted the theory that equity jurisdiction does not relate to the *power* of the chancellor. In *Fooks' Executors v. Ghingher, 172 Md. 612, 192 A. 782 (1937),*

---

4. The Supreme Court of the United States has often distinguished questions affecting the power or authority of the federal courts as such to decide controversies, and questions of equity jurisdiction, and has held that questions in the latter category are not truly jurisdictional at all. *Di Giovanni v. Camden Fire Ins. Ass'n,* 296 U. S. 64 (1935). See also *Douglas v. Jeannette,* 319 U. S. 157 (1943); *Atlas Life Ins. Co. v. Southern, Inc.,* 306 U. S. 563 (1940); *Pennsylvania v. Williams,* 294 U. S. 176 (1935); *Smith v. Apple,* 264 U. S. 274 (1924); *Mellen v. Moline Iron Works,* 131 U. S. 352 (1889).

5. See, for example, *DeFuniak, Modern Equity* (1950), Sec. 20, and *Cox, "The Void Order and the Duty to Obey,"* 16 U. of Chi. L. Rev. 86 (1948).

6. Compare *Gordon, "The Relation of Facts to Jurisdiction,"* 45 L. Q. Rev. 459 (1929), and *Jaffe, "Judicial Review: Constitutional and Jurisdictional Fact,"* 70 Harv. L. Rev. 953 (1957).

there is an elaborate discussion on the meanings of and differences between "jurisdiction" and "equity jurisdiction." This was an equity suit to enforce the liability of a stockholder in an insolvent bank which should have been brought on the law side of the court since the assessment sought was for the full par value of the stock. There was no appeal from the decree entered against the stockholder. Two years later he attempted to obtain relief from the decree, alleging that it was void for lack of jurisdiction. We stated that if equity jurisdiction were a question of power, the decree would have been void. However, since the lack of equity jurisdiction only rendered the decree voidable, the issue could not be raised after the time for appeal had expired. In *Wells v. Price,* 183 Md. 443, 37 A. 2d 888 (1944), we reaffirmed the view expressed in the *Fooks* case to the effect that equity jurisdiction is not concerned with power, but with the merits, *i. e.,* whether a court of equity is competent to give the peculiar kind of relief sought.

In a case such as the one now before us, where the objection to equity jurisdiction is the existence of an adequate remedy at law, and the objection goes merely to the *propriety* rather than the *power* to act, the courts have generally held that the chancellor has the *discretionary* power to decide whether to dismiss the case on his own motion. See Note, 27 Colum. L. Rev. 66 (1927). The disposition that a court can make of a case, *i. e.,* whether it must dismiss the bill or may simply transfer it to the law court, might very well affect the exercise of its discretion.

In a jurisdiction, unlike Maryland, where a case improperly brought in equity may not be transferred to a court of law, the chancellor has only two alternatives: either retain the bill, or dismiss it, and thereby compel the complaining party to commence anew. In such jurisdictions it is customary for the chancellor to exercise his discretion to dismiss sparingly in order to save time and expense, and avoid the inexorableness of limitations. If, however, the pleadings indicate the case is one of which equity traditionally has not assumed jurisdiction, the courts generally dismiss the action

even where no objection has been raised to the jurisdiction.[7] Similarly, actions in equity which appear to be merely demands for damages for breach of contracts are customarily dismissed.[8] Where, on the other hand, the case is one over which equity has "concurrent jurisdiction" of the subject matter, courts generally exercise discretion to retain the bill. See *Shryock v. Morris, supra,* at p. 77.[9]

In a jurisdiction, like Maryland, which has a statute or rule of court, such as Maryland Rule 515, permitting the transfer of actions from equity to law or *vice versa,* it is generally erroneous to dismiss the suit absolutely, either on motion of the defendant or on the chancellor's own motion, merely because the remedy at law is adequate, the usual procedure being to transfer the action to the law side.[10] However, although the chancellor should not *dismiss* the bill on his own motion, he can raise the question himself and then transfer the action.[11]

The Maryland law on this issue is somewhat vague. Miller states in Section 97 of his work on *Equity Procedure* (1897) that, although the defendant does not object to the lack of equity jurisdiction, the chancellor may on his own motion

7. See *Lewis v. Cocks,* 90 U. S. 466 (1874), (bill to recover title to land); *Hipp v. Babin,* 60 U. S. 271 (1856), (bill to recover possession of land and rents and profits); *Thurber Art Galleries v. Rienzi Garage,* 288 Ill. 35, 122 N. E. 863 (1919), (bill for replevin or conversion of automobile); *Roe v. Mayor and Aldermen of Jersey City,* 80 N. J. Eq. 35, 86 A. 815 (1911), (bill to quiet title and to declare void a tax title held by city); *Maxwell v. Frazier,* 52 Ore. 183, 96 P. 548 (1908), (bill of interpleader where defendants were not claiming same fund).

8. See *Fulton Irrigating Ditch Co. v. Twombly,* 6 Colo. App. 554, 42 P. 253 (1895); *Richards v. Lake Shore & M. S. Ry.,* 124 Ill. 516, 16 N. E. 909 (1888), in which the action was dismissed despite defendant's express waiver of the jurisdictional issue.

9. For cases on this subject in other jurisdictions, see *Wickwire-Spencer Steel Corp. v. United Spring Mfg. Co.,* 247 Mass. 565, 142 N. E. 758 (1924); *Van Horn v. Demarest,* 76 N. J. Eq. 386, 77 A. 354 (1909); *Varrick v. Hitt,* 66 N. J. Eq. 442, 57 A. 406 (1904).

10. See *Costley v. Smith,* 278 Pa. 242, 122 A. 280 (1923); *Tuckerman v. Mearns,* 262 F. 607 (Ct. of App., D. C., 1919).

11. See *Denison v. Keck,* 13 F. 2d 384 (8th Cir., 1926).

refuse to grant relief. There are some early decisions that seem to be authority for permitting the chancellor to raise the issue *sua sponte*, but it is often difficult, if not impossible, to determine with certainty which statements are the holding and which are dicta. See *Iglehart v. Armiger*, 1 Bland 519 (1829), *Berrett v. Oliver*, 7 Gill & J. 191 (1835),[12] *Hughes v. Jones*, 2 Md. Ch. 178 (1851), and *Dunnock v. Dunnock*, 3 Md. Ch. 140 (1852). However, in *Hubbard v. Jarrell*, 23 Md. 66 (1865), it was held that the *court below* could not raise the lack of jurisdiction by passing upon the question in its opinion, set out in the record, when, although the objection to the jurisdiction *was* raised in the lower court, it was not raised in a proper manner.

Even if it were clear that the chancellor in this State has discretion to raise the lack of jurisdiction on his own motion under some circumstances, it is certain that in some instances he could abuse his discretion by raising the question and then dismissing the case. We hold that in a case such as this, where the defendant elects to waive the question of jurisdiction, where the objection to equity jurisdiction, interposed by the chancellor, is the existence of an adequate remedy at law (going merely to the *propriety* of exercising rather than the *power* to exercise jurisdiction), and where the bill of complaint alleges irreparable injury, the chancellor will abuse his discretion when he raises the lack of jurisdiction on his own motion and dismisses the case. He should retain jurisdiction, grant temporary injunctive relief, and proceed to hear and determine, on the merits, the issues posed by the pleadings.

For the reasons stated the decree must be reversed.

> *Decree reversed, and case remanded for further proceedings consistent with this opinion, the costs to be paid by the appellee.*

---

**12.** *Berrett v. Oliver* may not have involved equity jurisdiction since limitations was also an issue.