## CASPAR SCHAIDT *vs.* FRANK A. BLAUL.

*Insufficient designation of Grantee in a Deed—Obstructing
an Alley-way—Injunction—Estoppel.*

Where, in a deed, the grant of a right of way is to the " owner or owners of the brick house, and curtilage adjoining the property hereby conveyed, on the west side thereof," the description of the grantee is insufficient to enable any one to claim as such.

Equity will enjoin a party from erecting and maintaining obstructions in an alley which destroy the complainant's right of way therein, and completely deprive him of the use and benefit of the alley, and materally decrease the value of his property.

The fact that the complainant himself had previously made an encroachment upon the alley will not estop him from seeking relief in equity against the defendant on account of the trespass.

The doctrine that where one stands by, and without objection sees another laying out money on property to which he himself has some claim or title, cannot afterward in equity and good conscience object to what has been done, does not apply to an act of encroachment on land, the title to which is equally well known, or equally

Schaidt vs. Blaul.

open to the notice of both parties; but the principle applies only against one who claims under some trust, lien or other right not equally open and apparent to the parties, and in favor of one who would be misled or deceived by such want of notice.

APPEAL from the Circuit Court for Alleghany County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, and BRYAN, J.

*R. T. Semmes,* for the appellant.

*James A. McHenry,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

The Circuit Court for Alleghany County, sitting in equity, passed a decree by which the appellant was required to remove certain obstructions from an alley, and was perpetually enjoined from erecting others. The bill of complaint was filed by Frank A. Blaul; and it charged that he was the owner in fee of a lot of ground on the west side of north Mechanic street in the town of Cumberland, and that Caspar Schaidt was in possession of another lot on said street, and claimed title thereto under conveyances from William Wright's heirs, under whom the complainant also claimed title. It was also charged that between these two lots there was an alley twelve feet wide, which led from Mechanic street to Wills creek; and that at the time the complainant became seized and possessed of this lot, and for more than twenty years previously thereto, this alley had been unobstructed. It was further charged that by virtue of four several conveyances, (of which copies are filed,) a right of way in, through, and

Schaidt *vs.* Blaul.

over said alley was vested in the complainant in perpetuity. All these allegations are distinctly admitted in the answer. It will be seen that the admissions comprehend not only matters of fact, but also the construction which the complainant puts on the deeds, which are exhibited with the bill of complaint. Before we state our opinion, it will relieve the case of some embarrassment, if we consider the effect and operation of these deeds. On the eighth of January, 1886, Josiah Englar, executor of William Wright, deceased, conveyed to Christian Pfizenmaier in fee, the lot now owned by Schaidt. The deed of conveyance which is executed both by Englar, as executor, and by Pfizenmaier, contains the following passage: "And the said Christian Pfizenmaier, in pursuance of a verbal agreement to that effect, made at the time of said sale, doth hereby grant unto the owners or owner, and their heirs and assigns, of the brick house, and curtilage adjoining the property hereby conveyed on the west side thereof, now in the occupancy of Josiah Englar, a right of way in perpetuity through the alley as it now stands, which divides the property above conveyed from said brick house." On the twenty-third of January, 1879, this lot was conveyed by Pfizenmaier and his wife to Schaidt in fee.

This deed contains the following passage: "And the said Pfizenmaier in pursuance of a verbal agreement to the effect made at the time of the sale of said lot to him, doth hereby grant unto the owner or owners and their heirs and assigns, of the brick house and curtilage adjoining the property hereby conveyed, on the west side thereof, now in the occupancy of Matthias Y. Rabold, a right of way in perpetuity through the alley as it now stands, which divides the property above granted from said brick house."

The grant of the right of way is stated to be made to persons who are designated as the owner or owners of a

certain brick house and curtilage.   By the common law it
was not necessary that the name of the grantee should be
inserted in a deed, provided he was described with suffi-
cient certainty to distinguish him from all other persons.
If a grant were made to the Earl of Essex, or to the
Duke of Norfolk, without other descriptions, it was good;
because there could not be two persons at the same time
holding either of these titles, and therefore the identi-
fication of the grantee would be. complete.   And pro-
bably to describe a grantee as heir of John Thompson
(a deceased person) would be sufficient; inasmuch as the
character of heir would show the person intended with
sufficient certainty.  But the ownership of a house is a casual
circumstance, which is liable to change from time to
time, and does not impress upon an individual any per-
manent characteristic by which he may be identified.
We cannot, therefore, hold that such a description is suf-
ficient to enable any one to claim as grantee in a deed.
And we might probably go further, and say that the
proper construction of the ninth section of Article 24 of
the Code, requires that the name of the grantee should
always be set forth in the deed.   Certainly such a con-
struction would be in harmony with the spirit of the reg-
istration Acts, which are founded on the policy of requir-
ing that every circumstance should appear on the face of
the registry, which is necessary to the devolution of the
title to real estate.

But although there was no grant of the right of way
to any one by these deeds, some effect must be given to
the words in question.   Although they do not convey the
right of way to the owners of the brick house, it is very
certain that they restrict and diminish the interest
conveyed to the grantee, in these two deeds.   The
right of way is excepted out of the interest conveyed,
and a declaration is made in substance that it is
for the benefit of the owners of the brick house.   On the

second day of May, 1868, Kennedy H. Butler and wife conveyed to John and Matthias Raybold, in fee, a portion of the lot now occupied and owned by the complainant. In this deed we find these words: "Reserving nevertheless, in, through and over the alley now open and binding on the easterly side of that part of said lot hereby granted, a right of way in perpetuity, in common with the owner and occupiers of that part of same lot binding on the easterly side of said alley directly opposite to the part of same lot hereby granted to the said John Rabold and Matthias Y. Rabold, their heirs and assigns, said alley leading from Mechanic street to Wills creek aforesaid." These words evidently show that it was the opinion of the grantors that they could grant a right of way over the alley in question. If they had any such right, the words used were not appropriate to the purpose of conveying it. The alley was not within the limits of the property which they conveyed, and they undertook to reserve a right of way over it in common with the owners of the adjoining lot. The language used is most inapt and untechnical. In *Sheppard's Touchstone, page* 80, it is said: "A reservation is a clause of a deed whereby the feoffor, donor, lessor, grantor, &c., doth reserve some new thing to himself out of that which he granted before." * * * * "This doth differ from an exception, which is ever of part of the thing granted, and of a thing *in esse* at the time; but this is of a thing newly created or reserved out of a thing demised, that was not *in esse* before; so that this doth always reserve that which was not before, or abridge the tenure of that which was not before." * * * * "It must be of some other thing issuing, or coming out of the thing granted, and not a part of the thing itself, not of some thing issuing out of another thing." * * * * * "It must be to one of the grantors and not to a stranger to the deed." And Lord COKE in the *Commentary upon Littleton*, 47a, says: "Note a diversity between an exception (which

is ever of part of the thing granted, and of a thing *in esse*) for which *exceptis, salvo, præter*, and the like, be apt words; and a reservation which is always of a thing not *in esse*, but newly created or reserved out of the land or tenement demised." The words of the deed which we have quoted cannot take effect either as a reservation or a grant. They, however, clearly describe the alley in question, and denote it as existing for the benefit of the owners of the lots binding on it. In March, eighteen hundred and eighty, Matthias Raybold and others conveyed this last mentioned lot, together with other land, to Blaul, the complainant. In this last deed no mention whatever is made of the alley. If, however, it were appurtenant to the lot granted, it would pass as an incident to the principal estate without special mention.

As it is averred in the bill and admitted in the answer that the complainant claims under William Wright's heirs, there is probably a deed from them conveying the property to Kennedy Butler; and it may be that this deed contains the original grant of the right of way. Or, it may be that a right of way for the benefit of the owners of this lot has been gained by prescription. A prescriptive right would be consistent with the language already quoted from the deeds, which refer to the alley as designated and existing. The record does not furnish us with the means of determining whether either of these suppositions is correct. But it does show unequivocally that the complainant's right of way is fully conceded. And although the parties have made a mistake in referring its origin to the deeds exhibited with the bill of complaint, we must give effect to their admissions, and we cannot make a controversy for them over this matter, when they have stated that they have none with each other.

The bill of complaint, after making the averments which have been mentioned, states that the complainant is engaged in the butchering business on a large scale, and requires

large quantities of ice in his business; that his ice is always gathered from Wills Creek, and that his only means of getting to and from said creek is through the alley, and that it is indispensable to him for the purposes of his business; that the defendant has obstructed it by building a massive stone wall at the edge of the creek, and is in the act of building a stable in front of the wall, which will extend across the entire width of the alley with the exception of three feet; that these obstructions destroy the complainant's right of way, and completely deprive him of the use and benefit of the alley, and will materially decrease the value of his property and work irreparable injury to him.   The evidence clearly shows that access to the creek through the alley was a material, useful and valuable convenience to the complainant in the transaction of his business, and that the obstructions made by the wall and stable deprive him of all beneficial use of the right of way for this purpose.   He is prevented from using the alley in the accustomed and most advantageous mode.   In the language of the authorities, this obstruction "reaches to the very substance and value of the estate, and goes to the destruction of it, in the character in which it is enjoyed." It has been long settled that such a wrongful act will be enjoined in equity. *White vs Flanigan*, 1 *Md.*, 525; *Shipley vs Ritter*, 7 *Md.*, 408, and many other cases.

It is alleged in the answer that previously to this obstruction, the complainant had made a considerable encroachment on the alley; and it is maintained that he is therefore estopped from making any claim for relief in equity against the defendant on account of his trespass. The complainant is answerable for whatever injury he may have done to the defendant's rights of property; but we cannot hold that an encroachment made by him will forfeit his easement, or take away any of his means of redress for an interference with it.   Another ground of defence set up in the answer is that the complainant well

knew that the defendant was building the wall in question, and made no objection to it, but stood by and acquiesced in the expenditure of large sums of money by the defendant, in the construction of it, without a complaint of any character until after it was completed.  Hereupon, it is maintained that the complainant is estopped to allege that the erection of the wall is in violation of his rights.   No doubt there are many cases·where the conscience of a party is bound by an equitable estoppel; and rights may be forfeited by such conduct as would make it against conscience to assert them.   Where a man knowingly suffers another to make expenditures on land under an erroneous opinion of his title and does not make his own claim known, just considerations require that he shall not be permitted to assert his legal rights to the prejudice of the person whom his silence has misled.   This doctrine has its natural limitations.   Without expanding this inquiry we shall content ourselves with a quotation from a decision of this Court:   "The doctrine that where one stands by and sees another laying out money on property, to which he himself has some claim or title, and does not give notice of it, he cannot afterwards, in equity and good conscience, set up such claim or title, does not apply to an act of encroachment on land, the title to which is equally well known, or equally open to the notice of both parties; but the principle applies only against one who claims under some trust, lien, or other right, not equally open and apparent to the parties, and in favor of one who would be misled or deceived by such want of notice."   *Casey vs. Inloes*, 1 *Gill*, 502.   In the present case Schaidt had full knowledge of Blaul's claim to the right of way, and knew that he did not intend to relinquish it.   There is some evidence of a feeble objection made by Blaul to these obstructions; our opinion, however, is not founded on this evidence, but on the general principle applicable to a case of this kind.

The decree of the Circuit Court required Schaidt to remove the wall and stable, and perpetually enjoined him from placing any other obstructions in the alley. We affirm it.

*Decree affirmed, with costs.*

(Decided 18th November, 1886.)